UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KAREN DIEDERICHS, as guardian
and conservator of MARK
DIEDERICHS, an incapacitated
person,

     Plaintiff,

v.

FCA US LLC,

     Defendant.

Case No. 23-cv-11287

Honorable Robert J. White

---

**OPINION AND ORDER (1) OVERRULING PLAINTIFF'S
OBJECTIONS, (2) ADOPTING THE REPORT AND
RECOMMENDATION, (3) GRANTING DEFENDANT'S MOTION TO
DISMISS, AND (4) DENYING PLAINTIFF'S MOTION TO FILE A
SECOND AMENDED COMPLAINT**

---

This case involves Plaintiff Karen Diederich's claims against Defendant FCA
US LLC (FCA) under the Employee Retirement Security Act (ERISA) and Michigan
law for breach of fiduciary duty and nonpayment of disability benefits, on behalf of
her incapacitated husband and FCA's former employee, Mark Diederich (Mark).
(ECF No. 14).  The Court referred the case to Magistrate Judge Curtis Ivy, Jr. for all-
pretrial proceedings. (ECF No. 8).   FCA later moved to dismiss the amended
complaint under Fed. R. Civ. P. 12(b)(6) (failure to state a claim). (ECF No. 15).

Magistrate Judge Ivy filed a report and recommendation on April 30, 2024, recommending that FCA's motion be granted. (ECF No. 23).  The same day, he denied Plaintiff's motion for leave to file a second amended complaint. (ECF Nos. 16, 24).  Plaintiff filed timely objections to the magistrate judge's report and recommendation, as well as to the magistrate judge's order denying leave to file a second amended complaint. (ECF Nos. 25-26).

For the following reasons, the Court (1) overrules Plaintiff's objections to the report and recommendation, as well as those to the magistrate judge's order, (2) adopts the report and recommendation, (3) grants FCA's motion to dismiss, and (4) affirms the denial of Plaintiff's motion for leave to file a second amended complaint.

## I.  Background

Since Plaintiff does not object to magistrate judge's factual summary, the Court finds the recitation of the underlying allegations accurate, and it will adopt the magistrate judge's summary of those allegations as they appear in the report and recommendation. (ECF No. 23, PageID.536-37).  The Court explicitly reiterates for clarity, however, that—per the amended complaint—FCA offered and administered a Disability Absence Program (DAP) and Long-Term Disability Plan (LTDP) for its eligible employees, including Mark (ECF No. 14, PageID.173-174).

## II.  Legal Standards

Regarding FCA's dispositive motion to dismiss, the Court "must determine de novo any part of the magistrate judge's disposition that has been properly objected to." *Pearce v. Chrysler Grp. LLC Pension Plan*, 893 F.3d 339, 346 (6th Cir. 2018); *see also* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).  "For an objection to be proper, Eastern District of Michigan Local Rule 72.1(d)(1) requires parties to specify the part of the order, proposed findings, recommendations, or report to which [the party] objects and to state the basis for the objection." *Pearce*, 893 F.3d at 346 (internal quotation marks omitted).

However, "when objections are merely perfunctory responses rehashing the same arguments set forth in the original petition, reviewing courts should review a Report and Recommendation for clear error." *Ruggierlo, Velardo, Burke, Reizen & Fox, P.C. v. Lancaster*, No. 22-12010, 2023 U.S. Dist. LEXIS 160755, at *3 (quotation omitted).  The Court acknowledges that Plaintiff's objections to the magistrate's report and recommendation largely reiterate the same arguments she made in the first instance responding to FCA's motion to dismiss.  But Plaintiff does provide some specific challenges to the magistrate judge's determinations, and, in any event, her objections fail under both de novo and clearly erroneous review.

Regarding Plaintiff's motion for leave to file a second amended complaint, "a district court may reconsider a magistrate judge's decision on a non-dispositive, non-excepted, pending pretrial matter only if it is clearly erroneous or contrary to law."

*Bisig v. Time Warner Cable, Inc.*, 940 F.3d 205, 219 (6th Cir. 2019) (cleaned up); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a).  "This standard requires the District Court to review findings of fact for clear error and to review matters of law de novo." *Id.*  "A factual finding is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Id.* (cleaned up).  "And an order is contrary to the law when it fails to apply or misapplies relevant statutes, case law, or rules of procedure." *Id.* (cleaned up).

## III.   Analysis

### A.   Motion to Dismiss

The magistrate judge recommended dismissing all the claims in the amended complaint. (*See* ECF No. 23).  Plaintiff raises five objections to the report and recommendation.  None have merit.

#### 1.   The DAP and ERISA

Plaintiff first argues that the magistrate judge incorrectly found that the DAP was not subject to ERISA. (ECF No. 26, PageID.685-87).

ERISA provides an eligible employee the right to bring a cause of action against a plan administrator, but only for violating a plan governed by that statute. *See* 29 U.S.C. § 1132(a)(1)(B).  "Determining the existence of an ERISA plan is a question of fact to be answered in light of all the surrounding circumstances and

facts from the point of view of a reasonable person . . . ." *Kolkowski v. Goodrich Corp.*, 448 F.3d 843, 847 (6th Cir. 2006).

"[M]ere labeling by a plan sponsor or administrator is not determinative on whether a plan is governed by ERISA." *Langley v. DaimlerChrysler Corp.*, 502 F.3d 475, 481 (6th Cir. 2007).   Further, as particularly relevant here, "normal compensation paid to an employee as a result of a disability and from the employer's general assets does not constitute an employee welfare benefit plan, but instead is considered a payroll practice" not subject to ERISA. *Id.* at 479 (quotations omitted).

In *Langley*, the Sixth Circuit held that the defendant employer's DAP constituted "a payroll practice" not governed by ERISA. *Id.* at 479-81.   Despite documentation "from which an employee might conclude the company represented the DAP to be covered by ERISA," the *Langley* court concluded that "[because] the DAP plainly falls under the definition of a payroll practice, it was not covered by ERISA." *Id.* at 479-81.   The Sixth Circuit found that the parties did not dispute whether "DaimlerChrysler made DAP payments entirely out of its general assets," and that the plaintiff in *Langley* did not assert "that recipients received anything other than 'normal' compensation under the plan." *Id.* at 479.   So "the DAP [fell] squarely within the plain meaning of a payroll practice." *Id.*

To distinguish *Langley*, Plaintiff asserts that FCA's DAP did not provide "normal compensation" because the plan reduced payments below 100 percent of an

employee's pay after an initial period.  She also argues that FCA's requirement—
that DBA benefits be exhausted before an employee is eligible for ERISA-governed
LTDP benefits—is a relevant circumstance that must subject the DAP itself to
ERISA.  In Plaintiff's view, "if the DAP is found to be unenforceable, then [FCA's]
entire disability-related program is illusory and codified public policy has been
subverted." (ECF No. 26, PageID.687).

The DAP, as it would have applied to Mark, provides for 100 percent of the
employee's pay for the first 39 weeks of disability, then 70 percent of pay for the
next 13 weeks. (ECF No. 15-3, PageID.246).  Nonetheless, "[s]ince 1979, the
Department of Labor has penned eleven opinion letters defining 'normal
compensation' to include payments of less than full salary." *Bassiri v. Xerox Corp.*,
463 F.3d 927, 930 (9th Cir. 2006).  Courts considering whether "normal
compensation" includes employer plans providing less than full salary have found
such plans exempt from ERISA. *Id.* at 930-34 (holding that income plan providing
60 percent of employee's salary fell within the scope of ERISA exemption for normal
compensation); *see also Claerhout v. Nexteer Auto. Corp.*, No. 18-12556, 2019 U.S.
Dist. LEXIS 68633, at *18 (E.D. Mich. Feb. 20, 2019) ("The 'normal compensation'
language has been interpreted to apply to compensation less than full
compensation.").

Even though the DAP benefits here provide less than full compensation after an initial period, they qualify as normal compensation because the benefits are tied to the employee's salary and end with the employee's termination. (ECF No. 15-3, PageID.245-46); *see also Bassiri*, 463 F.3d at 932. And because it is undisputed that the DAP benefits are paid from FCA's general funds, the magistrate judge properly concluded that the DAP was a payroll practice not subject to ERISA.

Further, although FCA requires employees to exhaust DAP benefits before they can become eligible for its ERISA-governed LTDP (ECF No. 15-3, PageID.267, 270), this condition does not warrant a finding that the DAP is itself subject to ERISA. Granted, a reasonable person could perceive this connection, and the references in the LTDP documents to both ERISA and the DAP, as extending ERISA's application to both benefit plans. But this perception is insufficient alone to overcome the substantial facts and law—discussed above—clearly showing that the DAP is a payroll practice not subject to ERISA. This is particularly so where Plaintiff provides only brief argument and no supporting authority for this point. *See Everly v. Everly*, 958 F.3d 442, 448 n.6 (6th Cir. 2020) ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed forfeited.") (cleaned up).

Nor does it appear that Congress intended ERISA to target the practice of making LTDP benefit payments contingent upon the exhaustion of DAP benefits.

"ERISA is intended to protect employees from abuses and mismanagement of private retirement and welfare funds controlled by employers or third parties." *Langley*, 502 F.3d at 481.  The Court fails to discern—nor does Plaintiff attempt to explain—how FCA's policy, that employees must exhaust DAP benefits from the company's general assets before triggering the LTDP, in any way increases the risk of abuses and mismanagement of the LTDP funds or is otherwise intended to subvert ERISA.

Rather, it seems FCA simply administers two separate benefit programs for disabled employees, one for short-term disabilities and one for long-term disabilities, with only the latter being covered by ERISA. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 833 (2003)[1] ("[N]othing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kind of benefits employers must provide if they choose to have such a plan.  Rather, employers have large leeway to design disability and other welfare plans as they see fit.") (citation omitted); *Schra v. Metro. Life Ins. Co.*, No. 13-13650, 2015 U.S. Dist. LEXIS 23000, at *1-2, 6-8 (E.D. Mich. Feb. 26, 2015) (where the defendant employer administered one LTDP subject to ERISA, and a separate short-term disability program defined as a payroll practice and not subject to ERISA).

---

[1] This case was superseded by statute on other grounds. *See Glover v. Comm'r*, No. 22-10497, 2022 U.S. App. LEXIS 352248, at *5-6 (11th Cir. Dec. 21, 2022).

Finally, insofar as Plaintiff relied upon additional regulations not cited in her objections, the magistrate judge correctly concluded that this authority was inapplicable to the facts and unsupportive of her position. In sum, the magistrate judge correctly determined that ERISA does not govern the DAP.

### 2. The DAP and Michigan Law

Plaintiff also argues that the magistrate judge incorrectly concluded that the DAP was unenforceable under Michigan Law. (ECF No. 26, PageID.687-91). She specifically argues that FCA promised DAP benefits as partial compensation for employment, and that the magistrate judge failed to properly construe the DAP, and its terms, consistent with this clear purpose.

Under Michigan law, "[a] valid contract requires five elements: (1) parties competent to contract, (2) a proper subject matter, (3) legal consideration, (4) mutuality of agreement, and (5) mutuality of obligation." *AFT Mich. v. State*, 497 Mich. 197, 235 (2015). Mutuality of agreement requires "an offer and acceptance." *See Bodnar v. St. John Providence, Inc.*, 327 Mich. App. 203, 213 (2019); *Kloian v. Domino's Pizza, L.L.C.*, 273 Mich. App. 449, 452 (2006). That is, there must be "mutual assent"—*i.e.*, a "'meeting of the minds' on all the essential elements of the agreement." *Huntington Nat'l Bank v. Daniel J. Aronoff Living Trust*, 305 Mich. App. 496, 508 (2014) (quoting *Goldman v. Century Ins. Co.*, 354 Mich. 528, 535 (1958)).

Whether there was a "meeting of the minds is judged by an objective standard, looking to the express words of the parties and their visible acts, not their subjective states of mind." *Kloian*, 273 Mich. App. at 454 (citation omitted). "[M]utuality is not present where one party is bound to perform, but not the other." *Smith v. Chrysler Fin. Corp.*, 101 F. Supp. 2d 534, 538 (E.D. Mich. 2000) (quoting *Reed v. Citizens Ins. Co. of America*, 198 Mich. App. 443, 449 (1993)[2]); *see also Mohamed v. Brenner Oil Co.*, No. 341899, 2019 Mich. App. LEXIS 309, *4 (Feb. 21, 2019).

Relying primarily on *Holmes v. FCA US LLC*, No. 20-13335, 2022 U.S. Dist. LEXIS 185554 (E.D. Mich. Oct. 11, 2022), the magistrate judge interpreted "the plain terms of Sections 8.01 and 8.02 of the DAP" to conclude that FCA was not bound to perform under the plan and, therefore, the DAP is not an enforceable contract. (ECF No. 23, PageID.544-55).

Section 8.01 of the DAP provides that FCA "shall have the right to terminate the Plan at any time and for any reason. The Company, in its sole discretion, may choose to terminate immediately any or all benefits for any or all past, present or future Employees." (ECF No. 15-3, PageID.255). Section 8.02 provides that FCA

> shall have the right at any time, and from time to time, to amend, in whole or in part, any or all provisions of the Plan. The Company may make any such amendment(s) effective with respect to any or all past, present or future Employees. Any such amendment may be made with or without retroactive effect.

---

[2] This case was overruled on other grounds by *Griffith v State Farm Mut. Auto Ins. Co.*, 472 Mich. 521 (2005).

(ECF No. 15-3, PageID.255-56).

Plaintiff argues that the magistrate failed to properly account for the DAP's stated purpose and ambiguity among its terms concerning FCA's intention to be bound.  She also asserts that *Holmes* is not binding and, nevertheless, distinguishable from the present case.

In *Holmes*, the district court addressed and rejected practically the same objection and argument involving another FCA employee and a similar—if not identical—DAP:

> Plaintiff raises one objection to Magistrate Judge Patti's Report and Recommendation.  Specifically, Plaintiff challenges the Magistrate Judge's determination that the DAP is non-binding and unenforceable and therefore not subject to a breach of contract claim.  For the following reasons, the Court is unpersuaded by Plaintiff's arguments.

> First, Plaintiff claims that the Magistrate Judge failed to follow applicable rules of construction for contracts in Michigan.  In particular, Plaintiff asserts that contracts are considered ambiguous when their provisions are capable of conflicting interpretations and that ambiguities are to be construed against the drafter.  Plaintiff notes that the Magistrate Judge "identified several provisions of the DAP that would establish an intent that it be an enforceable contract," including the Plan's purpose, choice of law provision in Section 10.05, funding provisions in Article III and Section 5.01(a), appeals procedure in Section 7.03, severability clause in Section 10.11, and binding effect clause in Section 10.06.  Thus, Plaintiff posits that the Magistrate Judge erred by relying on Sections 8.01 and 8.02—which give FAC the right to amend or unilaterally terminate the DAP at any time, with or without retroactive effect—to find that the DAP is not enforceable. . . .

*     *     *

. . . . Like the Magistrate Judge did, this Court recognizes that there is some tension between Sections 8.01 and 8.02 and certain other provisions of the DAP, particularly Section 10.06. Nevertheless, as discussed in greater detail *infra*, Michigan law precludes a determination that the DAP constitutes a binding, enforceable contract. Thus, Plaintiff's argument that the Magistrate Judge improperly applied Michigan rules of contract construction is unavailing.

*Id.* at *9-12 (citations and footnote omitted).

Relying on Michigan cases, the *Holmes* court concluded that "the retroactivity language in Section 8.02 of the DAP evidences FCA's intent not to be bound by its terms," and that "it would be imprudent to ignore the retroactivity language in Section 8.02 or its effect on the DAP as a whole, even if doing so would be favorable to Plaintiff's claim." *Id.* at *12-16.

Plaintiff contends likewise that the DAP's purpose, choice of law provision, funding provisions, appeals procedure, and severability foster sufficient ambiguity to construe the plan as a binding contract. Following *Holmes*, the Court concludes— after reading the DAP in its entirety, and the clear termination, amendment, and retroactivity provisions in Sections 8.01 and 8.02 particularly—that FCA did not intend to be bound by the plan.

While *Holmes* is not binding authority, the Court finds its analysis persuasive given its similarity to this case. And although Plaintiff claims that *Holmes* never addressed how the conflicting terms impacted the parties' intent to be bound, the

case addressed that question squarely.  The Court is unpersuaded that any of Plaintiff's other asserted factual distinctions are relevant in this case.[3]

Finally, Plaintiff claims that "[b]ecause [FCA's benefit structure] has been designed so that exhaustion of DAP benefits is a prerequisite to eligibility for benefits under the LTD Plan, a holding that the DAP is unenforceable under Michigan law would defeat Plaintiff's rights under the ERISA-governed LTD Plan." (ECF No. 26, PageID.691).  Plaintiff's only authority for this contention relates to the general proposition that, under the Supremacy Clause, courts cannot apply state law to defeat federal legislation. *See Abela v. GMC*, 257 Mich. App. 513, 524 (2003). However, as already discussed, the Court sees no impropriety with respect to FCA simply administering two separate but related benefit programs for disabled employees—one payroll practice for short-term disabilities and one ERISA plan for long-term disabilities.  As far as ERISA is concerned, conditioning the payment of LTDP benefits upon the exhaustion of DAP benefits is immaterial.

Because FCA did not intend to be bound by the DAP's terms, the plan is not an enforceable contract.  And since the DAP is not subject to ERISA or enforceable under Michigan law, the DAP claim (Count II) must be dismissed.

### 3.    Claims for Breach of Fiduciary Duty—Viability

---

[3] To the extent that Plaintiff conclusively asserts that promissory estoppel overcomes any lack of mutuality to be bound, the complaint at issue does not assert any claims of promissory estoppel.

Next, Plaintiff argues that the magistrate judge erred when he recommended dismissing the breach of fiduciary duty claims. (ECF No. 26, PageID.691-94). Counts I and IV of Plaintiff's complaint are both titled "Breach of Fiduciary Duty." (ECF No. 14, PageID.176, 182). In Count I, Plaintiff contends that that FCA had a fiduciary duty under ERISA to inform and assist Plaintiff with processing Mark's disability claim in good faith, and it breached this duty by not promptly disclosing relevant information and otherwise obstructing the claim. (ECF No. 14, PageID.176-77). In Count IV, she requests equitable relief under ERISA § 501(a)(3) to strike the LTDP provisions making benefits contingent on exhausting DAP benefits because (1) "such provision undermines the purpose and intent of ERISA" and (2) "the LTD Plan will be rendered illusory" "in the event that this Court finds that the DAP Plan is an ERISA-exempt payroll plan which is unenforceable under Michigan contract law." (ECF No. 14, PageID.182-83).

Plaintiff primarily relies on *Krohn v Huron Memorial Hosp.*, 173 F. 3d 542 (6th Cir. 1999), to claim that FCA breached its fiduciary duties under ERISA by (1) withholding information from Plaintiff after she made repeated inquiries regarding the DAP and LTDP, (2) not timely providing the DAP and LTDP terms, and (3) not assisting with processing the claim(s) for benefits.

But the magistrate judge did not reject the general viability of Plaintiff's claims for breach of fiduciary duty under the substantive law or facts. Instead, the

magistrate judge recommended dismissing these claims as untimely. (ECF No. 23, PageID.546-52).  Because the magistrate judge correctly determined that the claims for breach of fiduciary duty were not timely filed, *infra* Section III.A.4, the Court need not address the claims' substantive viability.

### 4. Claims for Breach of Fiduciary Duty—Timeliness

Plaintiff relatedly argues that the magistrate judge improperly deemed the claims for breach of fiduciary duty untimely. (ECF No. 26, PageID.694-97).

ERISA claims for breach of fiduciary duty must be brought (1) within six years of "the date of the last action which constituted a part of the breach" or (2) within three years of "the earliest date on which the plaintiff had actual knowledge of the breach," whichever is earlier. 29 U.S.C. § 1113.  "[I]n the case of fraud or concealment, such action may be commenced not later than six years after the date of discovery of such breach." *Id.*

Plaintiff commenced this case on May 31, 2023. (ECF No. 1).  She claims to have first discovered the alleged breach(es) in 2022 when FCA denied her claim for DAP benefits, and that FCA's provision of the DAP and LTDP documents "was not sufficient to put Plaintiff on notice of the systemic defects in the DAP and LTD Plans, or the extent to which [FCA] would obstruct her claim." (ECF No. 26, PageID.695-96).  She also argues that the six-year limitations period applies because FCA "failed to timely disclose the existence of disability benefits, provide the Plans, and facilitate

Plaintiff's application in the face of an affirmative fiduciary duty." (ECF No. 26, PageID.696).

Here, the magistrate judge found that FCA provided Plaintiff's counsel with the DAP and LRDP documents in September 2019, but plaintiff did not make any formal claim to FCA for benefits under the DAP until 2022. (ECF No. 23, PageID.547-48).  Plaintiff does not contest these determinations.  According to the magistrate judge, these facts, along with the allegations of Plaintiff's complaint, "allow the inference that Plaintiff must have known there was a problem with disability benefits in 2019." (ECF No. 23, PageID.548).  The Court agrees.

In the Sixth Circuit, "the relevant knowledge required to trigger the statute of limitations under 29 U.S.C. § 1113(2) is knowledge of the facts or transaction that constituted the alleged violation; it is not necessary that the plaintiff also have actual knowledge that the facts establish a cognizable legal claim under ERISA in order to trigger the running of the statute." *Wright v. Heyne*, 349 F.3d 321, 330 (6th Cir. 2003).

According to the complaint, Mark stopped working in October 2018 because of his disability, though he was not officially diagnosed until January 2019. (ECF No. 14, PageID.174-75).  FCA initially suspended Mark when he was unable to work, and it terminated his employment in December 2018. (ECF No. 14, PageID.175).  According to Plaintiff, "during the period of [Mark's] suspension, and

continuing after his termination date, [Plaintiff] on behalf of her incapacitated husband, [Mark], notified personnel in the Human Resources Department of [FCA] of his severe cognitive and behavioral impairments[,] and [she] repeatedly inquired into any and all disability benefits for which he may be eligible though his employment[] and requested assistance in processing such a disability claim[.]" (ECF No. 14, PageID.175).  Plaintiff was appointed as Mark's conservator in March 2019, after which Plaintiff continued to submit to FCA notice of Mark's benefit claim(s) and supporting documents. (ECF No. 14, PageID.176).

The complaint does not provide many details or any specific timeline regarding Plaintiff's efforts to secure benefits and FCA's response(s) thereto. However, as discussed above, FCA provided Plaintiff's counsel with the DAP and LRDP documents in September 2019, but plaintiff did not make any formal claim to FCA for benefits under the DAP until 2022.

Given this background, the facts or transaction constituting the alleged breach(es) is not FCA's ultimate denial of DAP benefits in 2022, but FCA's alleged obstruction and failure to facilitate Plaintiff's efforts to secure benefits beginning during Mark's suspension in 2018.  And Plaintiff was aware that FCA was not providing Mark any disability benefits for which he was allegedly eligible.  Then, once Plaintiff was appointed as Mark's conservator, FCA provided her the DAP and LTDP terms.  Contrary to Plaintiff's argument, she therefore knew all the

information necessary to support her claims for breach of fiduciary duty at the latest in September 2019 when she received the plan documents. At that time, she had already been unsuccessfully seeking benefits for Mark for almost a year after his initial disability and termination, and the plan documents would have revealed any "systemic defects" in FCA's DAP and LTDP offerings. The statute of limitations therefore began to run in September 2019.

Plaintiff also fails to show that FCA concealed her claims, so the six-year limitations period does not apply. As the magistrate judge observed, "Plaintiff d[oes] not explain how disclosure of plan documents in September 2019 constitutes concealment for purposes of the statute of limitations." (ECF No. 23, PageID.550). "She does not argue that she became aware of previously unknown plan information or obtained more plan documents after September 2019 that would have altered her course of conduct or otherwise impacted the statute of limitations." (ECF No. 23, PageID.550).

Plaintiff's supporting authority on this question, *Moyer v. Met. Life Ins. Co.*, 762 F.3d 503 (6th Cir. 2014), is unavailing. In *Moyer*, the Sixth Circuit reversed the district court's dismissal of the plaintiff's ERISA benefit claim, where the initial dismissal was based on the claim's untimeliness under the benefit plan's contractual statute of limitations. *Id.* at 504, 507. The Sixth Circuit concluded that the defendant employer did not substantially comply with ERISA § 1133 because it failed to

include judicial review time limits in its letter denying the plaintiff's claim. *Id.* at 506. The court determined that this failure denied the plaintiff his right to judicial review, so it remanded the case to the district court. *Id.* at 507. Notably, in *Moyer*,

> [the plaintiff]'s adverse benefit determination letter included notice of the right to judicial review but failed to include notice that a three-year contractual time limit applied to judicial review. The Summary Plan Description (SPD) failed to provide notice of either [the plaintiff]'s right to judicial review or the applicable time limit for initiating judicial review.

*Id.* at 504.

*Moyer* is materially different from this case in several respects. Here, Plaintiff emphasizes that FCA's 2022 letter denying Mark DAP benefits (*see* ECF No. 15-3, PageID.319-20), lacks any information about seeking judicial review of the denial. But as discussed, FCA's DAP is not subject to ERISA, which provides this requirement. And Plaintiff still fails to explain how this alleged failure constitutes concealment that in any way impaired her right to judicial review, particularly concerning the LTDP that *is* governed by ERISA. Indeed, unlike in *Moyer*, the DAP and LTDP terms Plaintiff received in September 2019 both provide explicit notice of the appeal procedures for each program. (ECF No. 15-3, PageID.252-54, 277-81).

Plaintiff also cites to *Santino v. Provident Life & Accident Ins. Co.*, 276 F.3d 772, 776 (6th Cir. 2001). But *Santino* does not even reference 29 U.S.C. § 1113 or involve any claim of concealment regarding the statute of limitations. So Plaintiff

fails to establish concealment that would extend the statute of limitations under 29 U.S.C. § 1113.

Lastly, Plaintiff argues that equitable estoppel precludes dismissal under a statute of limitations defense. She does not specifically challenge any aspect of the magistrate judge's analysis of this issue; instead, she incorporates by reference a general argument for equitable estoppel made in her separate objections regarding the order denying her request to file a second amended complaint (*See* ECF No. 26, PageID.697; ECF No. 25, PageID.586-88).

> [T]he elements of an equitable estoppel claim are: 1) conduct or language amounting to a representation of material fact; 2) awareness of the true facts by the party to be estopped; 3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; 4) unawareness of the true facts by the party asserting the estoppel; and 5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Bloemker v. Laborers' Local 265 Pension Fund*, 605 F.3d 436, 442 (6th Cir. 2010).

> Equitable estoppel . . . is invoked in cases where the defendant takes active steps to prevent the plaintiff from suing in time, such as by hiding evidence or promising not to plead the statute of limitations. Application of equitable estoppel should be premised on a defendant's improper conduct as well as a plaintiff's actual and reasonable reliance thereon. To invoke equitable estoppel, a plaintiff must demonstrate that his ignorance is not attributable to a lack of diligence on his part.

*Egerer v. Woodland Realty, Inc.*, 556 F.3d 415, 425 (6th Cir. 2009) (cleaned up).

"ERISA equitable estoppel applies to pension plans where a plaintiff can demonstrate extraordinary circumstances in addition to the traditional estoppel elements." *Bloemker*, 605 F.3d at 442.

The magistrate judge properly rejected Plaintiff's claim for equitable estoppel. First, to the extent Plaintiff relies on FCA's "obstruction and failure to disclose for a period of 11 months" after Mark was suspended (ECF No. 25, PageID.587), FCA owed no duty to Plaintiff until she was appointed as Mark's conservator in March 2019. *See* 29 U.S.C. § 1024(b)(4) (disclosure requirement limited to "any participant or beneficiary").  At this point, once Plaintiff requested the DAP and LTDP documents, FCA provided them without undue delay in September 2019.  More importantly, Plaintiff did not diligently pursue her claims.  Despite Plaintiff receiving the DAP and LTDP terms in September 2019, and thus having the necessary information at that time to recover any benefits to which Mark was entitled, she waited until (1) March 2022 to file a DAP claim with FCA, and until (2) May 2023 to file this lawsuit and any request regarding the LTDP.  This lack of diligence is fatal to the claim for equitable estoppel.

Because Plaintiff failed to commence her breach of fiduciary duty claims within three years of September 2019, she cannot proceed with them under 29 U.S.C. § 1113.  Those claims are, therefore, dismissed (Counts I and IV).

### 5.    The LTDP Claim

Lastly, Plaintiff argues that the magistrate judge incorrectly concluded that the LTDP claim warrants dismissal. (ECF No. 26, PageID.697-99).  The magistrate judge reasoned that dismissal was proper because (1) Mark was never eligible for any LTDP benefits, and (2) the LTDP claim was nevertheless time barred. (ECF No. 23, PageID.554-56).[4]  Regarding Mark's lack of eligibility, the magistrate judge found that he never exhausted DAP benefits as required by the LTDP terms, and that any potential coverage nevertheless stopped with Mark's termination. (ECF No. 23, PageID.554-55).

As an initial matter, Plaintiff arguably waived any rebuttal to these eligibility determinations by failing to counter FCA's argument on this issue in the proceedings before the magistrate judge. (*See* ECF No. 23, PageID.555). *See also Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) ("Allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act.") (internal quotation marks omitted); *Boyd v. McCabe*, No. 16-12741, 2019 U.S. Dist. LEXIS 138818, at *7 (E.D. Mich. Aug. 16, 2019) (overruling the plaintiff's objection solely because he raised a new argument that should have

---

[4] Although Plaintiff faults the magistrate judge for recommending dismissal of this claim based on a failure to exhaust administrative remedies, this is incorrect.  The magistrate judge explicitly stated that "[t]he claim should not be dismissed for failure to plead exhaustion." (ECF No. 23, PageID.554).  As a result, the Court declines to address this portion of Plaintiff's argument.

been made before the magistrate judge).   Nevertheless, Plaintiff's objection lacks merit.

Plaintiff cites *Waskiewicz v. Unicare Life & Health Ins. Co.*, 802 F.3d 851 (6th Cir. 2015), to argue that Mark's entitlement to LTDP benefits did not end with his termination because he became disabled while still employed.   In *Waskiewicz* a former Ford employee suffered a "debilitating emotional breakdown" in October 2010, on either the same day or the day before she was fired for failing to show up for work without justification. *Id.* at 853-54.   The plaintiff sought disability benefits from Ford's ERISA plan in December 2010, but the defendant claims administrator denied this request based on the plaintiff's termination and failure to timely seek benefits under the plan's terms. *Id.* at 852, 854.

The district court initially dismissed the plaintiff's claim, concluding that she was ineligible for benefits under the plan when terminated before making a claim. *Id.* at 852, 854-55.   The Sixth Circuit reversed. *Id.* at 853.

The court of appeals first stated that, at the onset of plaintiff's disability, she was a covered employee under the plan and thus entitled to benefits. *Id.* at 855.   It elaborated, "[w]hile she did not comply with the notification deadlines outlined in Section 4.02 of the Plan, that failure is not surprising given that she was suffering from severe mental illness and was unable to comply due to the very disability for which she sought coverage." *Id.*

23

Next, the Sixth Circuit concluded that "Ford's retroactive termination of [the] plaintiff, which thereby deprived her of disability benefits, [is] inconsistent with the spirit of employer-provided health care benefits generally and with this Plan specifically." *Id.* Relying on the plan's language that "coverage will end on the date of termination[] *unless the Participant is Disabled on that date*," the court said that "the Plan contemplates awarding benefits to employees who become disabled as long as they are working for Ford at the time of onset, which occurred here." *Id.* at 855-56 (emphasis in original).

The court of appeals stated further:

> An insurance policy can hardly be said to provide employee disability "insurance" at all if it protects against sudden disability but not if the employer immediately discharges the employee because of the disability before she gets a chance to apply for the benefits. Reading the terms of an insurance policy in this way would be an abuse of discretion *unless no other interpretation is possible*. Common sense convinces us that the denial of benefits in this case runs contrary to the spirit of ERISA, which is designed to protect employee benefits, not subject them to arbitrary termination—in this case retroactive termination—after the benefit has otherwise accrued.

*Id.* at 856 (emphasis added).

The Sixth Circuit also stated that benefits "may not be denied" so long as the plaintiff's failure to comply with the plan's reporting deadlines "was directly caused by the disability itself." *Id.* Accordingly, the Sixth Circuit remanded the case so the plaintiff could make this showing. *Id.*

*Waskiewicz* distinguishable from the instant facts.   First, the LTDP terms provide that employees become ineligible for benefits upon termination, even if they were eligible and participating before this event. (*See* ECF No. 15-3, PageID.271 ("A Participant will not be eligible to participate in this Plan . . . and, if an Employee is participating in the Plan on the date of the following event, then the Employee will not be eligible to receive LTD benefits for any period of time following . . . the date the Employee . . . discharged[.]")).   Unlike in *Waskiewicz*, the LTDP terms lack any exception that contemplates awarding benefits to employees who are already disabled when fired.

Second, Mark's ineligibility cannot be attributed to the disability for which Plaintiff seeks benefits.   To the extent that Mark's disability prevented him from timely claiming benefits, Plaintiff was appointed as Mark's conservator in March 2019.   Even after FCA provided Plaintiff the DAP and LTDP in September 2019, she waited over two years before formally claiming any benefits from FCA.   This extensive delay cannot reasonably be attributed to Mark's disability.

Setting aside this delay, Mark also was ineligible because he never exhausted DAP benefits as required by the LTDP terms.   In this respect, Plaintiff argues that "sufficient time has lapsed" such that Mark would be eligible for LTDP benefits "but for the denial of the DAP claim." (ECF No. 26, PageID.698).   She asserts that this denial "created an administrative barrier to processing" any potential LTDP claim

and states in closing, "[t]his unjust ruling cannot stand." (ECF No. 26, PageID.699). But the Court, as discussed, sees no impropriety with respect to FCA administering these two separate but related benefit programs, and the DAP claims must be dismissed for the reasons provided above. The LTDP claim at issue concerns only FCA's failure to pay benefits under this program, and the facts show that Mark was ineligible.

Finally, Plaintiff does not address the magistrate judge's alternate basis to deny the LTDP claim as untimely. Given this failure, the Court need not review the magistrate judge's alternate reasoning. *See Everly*, 958 F.3d at 448 n.6 ("Issues averted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed forfeited.") (cleaned up). For all these reasons, dismissal of the LTDP claim (Count III) is warranted.

### B.   Motion to File Second Amended Complaint

The magistrate judge denied Plaintiff's motion to file a second amended complaint on the same day he issued the report and recommendation, concluding that the proposed amendments were futile (*See* ECF No. 24). Plaintiff raises three specific objections to the magistrate judge's order denying her motion. None have merit. To the extent Plaintiff also generally reiterates or refers to arguments from her objections to the magistrate judge's report and recommendation, the Court already addressed and rejected these claims. *See supra* Section III.A.

### 1.     Promissory Estoppel

Plaintiff argues that the magistrate judge incorrectly concluded that her proposed additional claim of promissory estoppel regarding the DAP was not viable. (ECF No. 25, PageID.580, 585-86).  The magistrate judge reasoned that this claim could not succeed because the DAP terms did not create a clear and definite promise on which Mark could justifiably rely, particularly when the terms "unambiguously state[] that [FCA] can amend or terminate the DAP at any time for any reason." (ECF No. 24, PageID.566-67).

Having reviewed the magistrate judge's order and Plaintiff's objection, the Court concludes that the magistrate judge's factual conclusions are reasonably correct, and his legal reasoning is sound.  Because the magistrate judge applied correct law and reasonably concluded that Plaintiff had no viable claim for promissory estoppel, this objection is overruled.

### 2.     Initial Duty to Plaintiff

Next, Plaintiff argues that (1) the magistrate judge incorrectly determined that FCA owed no duty to Plaintiff until she was appointed as Mark's conservator and (2) she was entitled to information and assistance on behalf of her incapacitated spouse or "as a potential spousal beneficiary." (ECF No. 25, PageID.580, 583-84).  However, as already stated, 29 U.S.C. § 1024(b)(4) only extends reporting requirements under ERISA to "any participant or beneficiary."  Plaintiff cites no

27

contrary provision of ERISA, nor any caselaw, to support her argument.  And neither the DAP nor the LTDP provide benefits to a participant's dependents, pay benefits after a participant's death, or define spouses as eligible survivors for benefits. (*See* ECF No. 15-3, PageID.240-89).

Plaintiff also asserts that the magistrate's related determination regarding the DAP's 20-day claim deadline "is extremely unjust" and would "reward[]" FCA's "obstructive tactics." (ECF No. 25, PageID.583-84).   The magistrate judge specifically concluded that FCA could not have breached any duty to Plaintiff even after she was appointed as Mark's conservator because by then any DAP claim was already untimely under the program's terms. (ECF No. 24, PageID.563-64).  But this argument does not change the fact that the DAP was a payroll practice not subject to ERISA and its requisite duties, nor does it address Plaintiff's significant delay in seeking DAP benefits even after she was appointed as Mark's conservator and provided all the plan documents.  Ultimately, the Court again concludes that the magistrate judge's factual conclusions are reasonably correct, and his legal reasoning is sound.  Because the magistrate judge did not clearly err or misapply the law, this objection is overruled.

### 3.    Equitable Estoppel

Plaintiff also challenges the magistrate judge's determination that her proposed additional claim of equitable estoppel regarding the DAP was futile. (ECF

No. 25, PageID.580-81, 586-88).   But the Court already addressed and rejected Plaintiff's argument on this score. *See supra* Section III.A.4.   This objection is, therefore, overruled.

## IV.   Conclusion

For the reasons given, IT IS ORDERED that Plaintiff's objections to the magistrate judge's report and recommendation are OVERRULED.

IT IS FURTHER ORDERED that Plaintiff's objections to the magistrate judge's order denying her motion for leave to file a second amended complaint are OVERRULED.

IT IS FURTHER ORDERED that Defendant's motion to dismiss is GRANTED.

IT IS FURTHER ORDERED that Plaintiff's motion for leave to file a second amended complaint is DENIED.

Dated: December 19, 2024              s/Robert J. White
                                     Robert J. White
                                     United States District Judge